IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE:  )<br>)<br>North Carolina Technological  )<br>Development Authority, Inc.,  )<br>)<br>Debtor.  )<br>_____)<br>)<br>NORTH CAROLINA TECHNOLOGICAL  )<br>DEVELOPMENT AUTHORITY, INC., and )<br>SARA A. CONTI, Trustee,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>STATE OF NORTH CAROLINA,  )<br>)<br>Defendant.  ) | Case No. B-03-83278C-11D<br><br><br><br><br><br><br><br>Adversary No. 05-9004 |

## MEMORANDUM OPINION

This adversary proceeding came before the court on January 11, 2007, for hearing on the plaintiffs' motion for judgement on the pleadings and for hearing on the defendant's motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, the court has concluded that the plaintiffs' motion should be denied and that the defendant's motion to dismiss should be granted.

This adversary proceeding was brought by the Trustee and North Carolina Technological Development Authority, Inc. ("NCTDA"), the debtor in the underlying Chapter 11 case, against the State of North Carolina (the "State") asserting two claims for relief. The first claim for relief seeks to recover a pre-petition transfer of stock to the State on the grounds that the transfer was either fraudulent or, in the alternative, a preferential transfer. The second claim for relief seeks a

declaration that a reversionary interest of the State under a deed from the State to NCTDA "arises, if at all, at such time as the 2 Davis Drive Property is no longer used by NCTDA, or its successors or assigns, as a business incubator." The plaintiffs also seek a declaration that a subsequent deed recorded by the State as a purported correction deed is invalid and of no legal effect. The State asserts in its answer and counterclaim that the State's reversionary interest arises if NCTDA ceases to use the property as a business incubator and that the reference to "successors and assigns" in the deed was unauthorized and is invalid. The plaintiffs have withdrawn the first claim for relief and all remaining issues arise out of the second claim for relief.

## I. JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(O), which this court may hear and determine.

## II. STANDARD OF REVIEW

A court should not enter judgment on the pleadings in favor of a defendant "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." John S. Clark Co., Inc. v. United Nat's Ins. Co., 304 F. Supp. 2d 758, 765 (M.D.N.C. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In determining a motion for judgment on the pleadings or a motion to dismiss for failure to state a claim for relief, a court may consider the written documents attached to the pleadings. F.R.C.P. 10(c)[1]; N. Indiana Gun & Outdoor v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998).

---

[1] F.R.C.P. 10(c) is made applicable to adversary proceedings by Bankruptcy Rule 7010.

"As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted by the district court only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief." 5B Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004). See also Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974) (same); First Financial Sav. Bank, Inc. v. American Bankers Ins. Co. of Florida, Inc., 699 F.Supp. 1158, 1161 (E.D. N.C. 1988) (same). The plaintiff's allegations are to be construed "liberally, because the rules require only general or 'notice' pleading, rather than detailed fact pleading." 2 James Wm. Moore et al, MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 2004).

### III. FACTS

The following facts are alleged in the plaintiffs' complaint or contained in uncontested attachments to the pleadings and are taken as true for purposes of the ruling on the defendant's motion to dismiss:

In 1983 the North Carolina General Assembly enacted the New Technology Jobs Act, 1983 Sess. Laws, Chap. 899, Sec. 2, which created the North Carolina Technological Development Authority. The North Carolina Technological Development Authority was created as a state agency administratively housed within the North Carolina Department of Commerce and for the purposes stated in the enabling legislation.

In 1991 the North Carolina General Assembly provided for the transfer of the assets of North Carolina Technological Development Authority to NCTDA, a private nonprofit corporation. The legislation providing for this transfer, 1991 N.C. Sess. Laws, Chap. 689, Sec 154.1 (hereinafter the


"As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted by the district court only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief." 5B Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004). See also Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974) (same); First Financial Sav. Bank, Inc. v. American Bankers Ins. Co. of Florida, Inc., 699 F.Supp. 1158, 1161 (E.D. N.C. 1988) (same). The plaintiff's allegations are to be construed "liberally, because the rules require only general or 'notice' pleading, rather than detailed fact pleading." 2 James Wm. Moore et al, MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 2004).

### III. FACTS

The following facts are alleged in the plaintiffs' complaint or contained in uncontested attachments to the pleadings and are taken as true for purposes of the ruling on the defendant's motion to dismiss:

In 1983 the North Carolina General Assembly enacted the New Technology Jobs Act, 1983 Sess. Laws, Chap. 899, Sec. 2, which created the North Carolina Technological Development Authority. The North Carolina Technological Development Authority was created as a state agency administratively housed within the North Carolina Department of Commerce and for the purposes stated in the enabling legislation.

In 1991 the North Carolina General Assembly provided for the transfer of the assets of North Carolina Technological Development Authority to NCTDA, a private nonprofit corporation. The legislation providing for this transfer, 1991 N.C. Sess. Laws, Chap. 689, Sec 154.1 (hereinafter the

"Transferring Legislation"), stated that NCTDA was to use the assets transferred for several specific purposes, one of which was to act as a business incubator. The Transferring Legislation repealed N.C.G.S. §§ 143B-471 through 143B-471.5 and transferred ownership of the land and improvements formerly known as the "Science and Technology Research Center" from the State to NCTDA, effective September 1, 1991. This property is known as 2 Davis Drive and is the real property involved in this adversary proceeding.

In pertinent part, the "Transferring Legislation" stated:

(1) The below described land and improvements, formerly known as the "Science and Technology Research Center" together with property installed in the building and other movable equipment and supplies *shall be transferred* by the State of North Carolina to the North Carolina Technological Development Authority, Inc. . .

(2) The transfer *made by this section* shall be evidenced by a deed executed under G.S. 146-75 and registered in accordance with G.S. 145-77. The deed shall provide that the property transferred by this section shall automatically revert to the State of North Carolina if the property is used for any other purpose other than the purpose set forth in subdivision (3).

(3) The transfer *made by this section* is made on the condition that the North Carolina Technological Development Authority, Inc. shall use the property described . . . solely as a business incubator serving technology research-based entrepreneurial companies in the Research Triangle Park. If the North Carolina Technological Development Authority, Inc. ceases to use the property for the purposes described in this section, then the property shall automatically revert to the State of North Carolina.

1991 N.C. Sess. Laws, Chap. 689, Sec. 154.1, p. 2025-26 (emphasis added).

On September 1, 1991 a deed describing the 2 Davis Drive Property from the State of North Carolina to NCTDA signed by then Governor James G. Martin and attested by then Secretary of State Rufus Edmiston was recorded in the office of the Register of Deeds of Durham County. The

deed contained the following language:

> The party of the first part [the State] has bargained and sold and by these presents does hereby bargain, sell and convey unto the said party of the second part [NCTDA], *its successors and assigns*, a fee simple determinable estate in and to that certain parcel of land . . .
>
> TO HAVE AND TO HOLD the aforesaid tract or parcel of land, and all privileges and appurtenances thereunto belonging to the said party of the second part, *its successors and assigns*, for as long as said land is used solely as a business incubator serving technology researched-based entrepreneurial companies in the Research Triangle Park, and no longer. . . .

Emphasis supplied.

The NCTDA took possession of the 2 Davis Drive Property and thereafter operated the property as a business incubator. NCTDA filed its voluntary Chapter 11 petition in the United States Bankruptcy Court for the Middle District of North Carolina on October 3, 2003. The property was listed as an asset of NCTDA and NCTDA retained ownership and possession of the property under its plan of reorganization. NCTDA filed this adversary proceeding on January 28, 2005. It is the "successors and assigns" language found in the deed that is at the heart of the dispute in this proceeding. The State argues that those words can be given no legal effect. According to the State, the Transferring Legislation authorized the transfer of a determinable estate that terminates if NCTDA transfers the property or otherwise ceases to use the property for the purpose described in the Transferring Legislation. NCTDA argues that the words "successors and assigns" are operative and allow NCTDA to convey the property to any party of its choosing and that the transferee may retain the property so long as the property continues to be used for the purpose described in the Transferring Legislation.

## IV. ANALYSIS

The plaintiffs' complaint, even when construed liberally, does not present factual allegations sufficient to sustain relief in favor of the plaintiffs. When the complaint is boiled down to its bare essentials, there is one threshold issue that must be resolved: What was the effect of the deed executed on September 1, 1991?

i.) Effect of the deed

The portion of the deed executed by the Governor and the Secretary of State that purported to transfer an interest to NCTDA's successors and assigns is void. This is because a public officer charged with the duty of carrying out an act of the legislature, may not do that which is unauthorized or forbidden by the legislature. Glover v. Rowan Mut. Fire Ins. Co., 228 N.C. 195, 45 S.E.2d 45 (1947) ("When the right to do a thing depends upon legislative authority, and the legislature has failed to authorize it, or has forbidden it, the approval of the doing of it by a ministerial officer cannot create a right to do that which is unauthorized or forbidden."). This principle is brought into greater relief when considered in tandem with the fact that the action in question is a transfer of government land.

"It is a well settled principle of law that title to government property may pass only in the manner prescribed by the duly constituted legislative body and that title to any such property may not be forfeited through the oversight, carelessness, negligence, or even intentional conduct of any of the agents of the government." State v. West, 31 N.C.App. 431, 441, 229 S.E.2d 826, 832 (1976) (citing United States v. Mallery, 53 F.Supp. 564 (W.D. Wash. 1944). In State v. West the issue was title to historical documents from the eighteenth century, but the Court of Appeals noted that this


principle applies to government lands as well. State v. West, 229 S.E.2d at 832 ("This legal principle applies to government land, personal property or public records."). The rule rests on the rationale "that property owned by the government is held in trust for the people and that the intentional or negligent acts of the agents of the government should not serve to deny the people of the benefits and enjoyment of 'their' property." Id. (citing Bartholomew v. Staheli, 86 Cal. App. 2d 844, 195 P.2d 824 (1948).

Applying these principles, the court finds that the execution by the Governor of the deed to NCTDA purportedly transferring a greater interest in State land than was authorized by the Legislature was *ultra vires*.[2] The transfer of 2 Davis Drive to NCTDA was by and pursuant to the Transferring Legislation. That legislation makes it crystal clear that such transfer was on condition that NCTDA use the property for the purposes described in the Transferring Legislation and that the property was to revert to the State if such use by NCTDA ceased. The automatic reversion of the property is provided for in plain and unambiguous language:

> If the North Carolina Technological Development Authority, Inc. ceases to use the property for the purposes described in this section, then the property shall automatically revert to the State of North Carolina.

The only transfer provided for by the Transferring Legislation was one in which the property automatically reverted to the State if NCTDA ceased using the property for the statutory purposes. The deed authorized by the Transferring Legislation was one which would "evidence" the transfer made by the Transferring Legislation. No discretion was left with respect to the nature of the transfer

---

[2] *Ultra vires* is defined as "[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law." Black's Law Dictionary 1559 (8th ed. 2004)

to be evidenced by the deed and thus, the preparation and execution of the deed was purely ministerial. The inclusion in the deed of the words "successors and assigns" purported to create an interest in 2 Davis Drive that was not authorized by the Transferring Legislation and which, in fact, was contrary to the requirement that the property "automatically revert" if NCTDA ceased using the property for the statutory purposes. The portion of the deed referring to NCTDA's "successors and assigns" therefore is void. As a result, the deed was ineffectual and incapable of transferring any interest in the land to NCTDA's successors and/or assigns. See McCoy v. Love, 382 So.2d 647, 648 (Fla. 1980) ("The recording of a void or forged deed is legally insufficient to create a legal title, and affords no protection to those claiming under it.").

ii.) Estoppel

NCTDA argues alternatively that the conveyance to it and its "successors and assigns" should ultimately be deemed effective by reason of estoppel. The cases relied upon by NCTDA state the following rule that has been formulated under North Carolina law:

> We acknowledge that our courts have not sanctioned the use of estoppel against governmental agencies to the same extent as used against private individuals or private corporations. Our courts have held, however, that estoppel may arise against a [governmental entity] out of a transaction in which it acted in a governmental capacity, if an estoppel is necessary to prevent loss to another, and if such an estoppel will not impair the exercise of the governmental powers of the [entity].

Hayes v. Town of Fairmont, 130 N.C.App. 125, 502 S.E.2d 380 (1998)(brackets in original)(internal citations omitted). This rule is, indeed, a fairly well-established one in the State of North Carolina. See, e.g. Washington v. McLawhorn, 237 N.C. 449, 454, 75 S.E.2d 402, 406 (1953); Land-Of-Sky Regional Council v. County of Henderson, 78 N.C.App. 85, 91, 336 S.E.2d 653, 657 (1985); Fike v. Bd. of Trustees, 53 N.C.App. 78, 81-82, 279 S.E.2d 910, 913 (1981); Meachan v. Montgomery

County Bd. Of Educ., 47 N.C.App. 271, 279, 267 S.E.2d 349, 354 (1980).

The cases in support of this rule must, however, be read in light of another rule. For, although they *do* provide a legal basis for applying the principles of estoppel against a governmental entity, they do not provide such a basis in *every* factual circumstance. Specifically, a governmental entity may not be estopped from asserting the defense of *ultra vires*. See generally 31 C.J.S. *Estoppel and Waiver* § 172 (1996) ("When the acts of a governmental body are ultra vires, those acts cannot be asserted as working an estoppel against the government."); Bowers v. City of High Point, 339 N.C. 413, 425, 451 S.E.2d 284, 292 (1994). In Bowers, the Supreme Court of North Carolina made it clear that "[i]f a contract is *ultra vires* it is wholly void and (1) no recovery can be had against the [government]; (2) there can be no ratification except by the Legislature; (3) the [government] cannot be estopped to deny the validity of the contract." Id. (citing Moody v. Transylvania County, 271 N.C. 384, 386, 156 S.E.2d 716, 717 (1967) (brackets added).[3] Further, "[t]he fact that the other party to the contract has fully performed his part of the contract, or has expended money on the faith thereof, will not preclude the [government] from pleading *ultra vires*." Bowers, 451 S.E.2d at 292 (internal citations omitted).

---

[3]Although Bowers addresses this rule as applied to a municipality, the court can discern no reason why the same rule would not be applicable to other governmental units, including the State. See e.g., State v. Adams, 107 Wash.2d 611, 614, 732 P.2d 149, 153 (1987); Samsell v. State Line Dev. Co, 154 W.Va 48, 59, 174 S.E.2d 318, 325 (1970) ("A state or one of its political subdivisions is not bound by the legally unauthorized acts of its officers; and all other persons must take note of the legal limitations upon their power and authority."); State ex rel. Com'rs of Land Office v. Phillips Petroleum Co., 258 P.2d 1193, 1199-1200 (Okla. 1953); Ross v. Daniel, 53 N.M. 70, 75-76, 201 P.2d 993, 996 (1949); Murphy v. State, 65 Ariz. 338, 368, 181 P.2d 336, 355-56 (1947) ("[The] principle of estoppel does not apply to unauthorized or ultra vires acts of state officials regardless of capacity in which state acts, whether proprietary or governmental."); State ex rel. Shell Oil Co v. Register of State Land Office, 193 La. 883, 891, 192 So. 519, 521 (1939) (recognizing the principle as applied to a State, but finding that the particular act by the Governor was not *ultra vires*).

In the case at bar, the analysis of the 1991 deed[4] containing the "successors and assigns" language has lead this court to conclude that the Governor did not have the authority to convey more than was authorized by the Legislature and that in doing so he was acting *ultra vires*. Thus, the State simply could not be estopped from pleading *ultra vires* pursuant to Bowers. None of the cases applying the rule advocated by NCTDA involve *ultra vires* actions on the part of the governmental officials or agencies.[5]

iii) Counterclaim of the State of North Carolina

In addition to asserting that the plaintiffs' complaint fails to state a claim for relief, the State's answer also contains a counterclaim in which the State has requested a declaratory judgment declaring that the State's reversionary interest in 2 Davis Drive arises at the time that NCTDA no longer uses the property as required under the Transferring Legislation and that if NCTDA ceases to use 2 Davis Drive as required under the Transferring Legislation, 2 Davis Drive will automatically revert to the State of North Carolina. For the same reasons that the court has concluded that the plaintiffs' complaint does not state a claim for relief, the court is satisfied that the State of North Carolina is entitled to a judgment on the pleadings granting the relief sought in its counterclaim. The

---

[4] A deed is a contract. Shingleton v. State, 260 N.C. 451, 454, 133 S.E.2d 183, 186 (1963).

[5] Washington v. McLawhorn, 237 N.C. 449, 454, 75 S.E.2d 402, 406 (1953) (simply states the rule); Hayes v. Town of Fairmont, 130 N.C.App. 125, 502 S.E.2d 380 (1998) (Town estopped from asserting statute of limitations when it mislead those who were negatively impacted by the time bar); Land-Of-Sky Regional Council v. County of Henderson, 78 N.C.App. 85, 91, 336 S.E.2d 653, 657 (1985)(specifically taking note of the fact that the actions subject to an estoppel were not *ultra vires*); Fike v. Bd. of Trustees, 53 N.C.App. 78, 81-82, 279 S.E.2d 910, 913 (1981) (agent acting within scope of authority); Meachan v. Montgomery County Bd. Of Educ., 47 N.C.App. 271, 279, 267 S.E.2d 349, 354 (1980) (agent acting within scope of authority).

issues pertinent to the counterclaim are identical to the issues that were pertinent to the State's motion to dismiss and those issues have been fully briefed and argued by the parties and there is no reason to delay in disposing of this entire proceeding by dealing with the merits of the State's counterclaim at this time. Therefore, even though the State did not formally move for judgment on the pleadings as to its counterclaim, it nonetheless is appropriate to grant such relief at this time.

## V. CONCLUSION

Contemporaneously with the filing of this memorandum opinion, a separate order shall be entered denying the plaintiffs' motion for judgment on the pleadings, granting the defendant's motion to dismiss the plaintiffs' complaint for failure to state a claim for relief and granting the defendant a judgment on the pleadings with respect to its counterclaim.

This 16th day of February, 2007.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

Paul C. Ridgeway, Esq.
William Janvier, Esq.
P.O. Box 911
Raleigh, NC 27602

Donald R. Teeter, Esq.
Ann W. Matthews, Esq.
Asst. Attorney Generals
9001 Mail Service Center
Raleigh, NC 27699-9001

Michael D. West, Bankruptcy Administrator

Sara A. Conti, Trustee